# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

CHARLES CONNER, On Behalf of Himself and All Others Similarly Situated,

    Plaintiff,

v.

SENDGRID, INC.,
WARREN ADELMAN,
AJAY AGARWAL,
FRED BALL,
BYRON DEETER,
SAMEER DHOLAKIA,
ANNE RAIMONDI,
HILARY SCHNEIDER, and
SRI VISWANATH,

    Defendants.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Charles Conner ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of SendGrid, Inc. ("SendGrid" or the "Company") against SendGrid and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder and

to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Twilio Inc. ("Twilio") through Twilio's direct wholly owned subsidiary, Topaz Merger Subsidiary, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On October 15, 2018, Twilio issued a press release announcing SendGrid and Twilio had entered into an Agreement and Plan of Merger dated October 15, 2018 to sell SendGrid to Twilio. Under the terms of the Merger Agreement, each SendGrid stockholder will receive 0.485 of a share of Twilio Class A common stock for each share of SendGrid they own (the "Merger Consideration"). Based on the October 15, 2018 closing price of Twilio common stock, the implied value of the Merger Consideration is $36.92 per share. The Proposed Transaction is valued at approximately $2 billion.

3. On December 18, 2018, SendGrid filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that SendGrid stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Morgan Stanley & Co. LLC's ("Morgan Stanley") potential conflicts of interest; and (ii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SendGrid stockholders need such material information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. In short, unless remedied, SendGrid's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act.

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. SendGrid is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SendGrid common stock.

9. Defendant SendGrid is a Delaware corporation, with its principal executive offices located at 1801 California Street, Suite 500, Denver, Colorado 80202. The Company provides cloud-based technology business management solutions to enterprises. SendGrid's common stock trades on the New York Stock Exchange under the ticker symbol "SEND."

10. Defendant Warren Adelman ("Adelman") has been a director of the Company since April 2014.

11. Defendant Ajay Agarwal ("Agarwal") has been a director of the Company since November 2016.

12. Defendant Fred Ball ("Ball") has been a director of the Company since April 2017.

13. Defendant Byron Deeter ("Deeter") has been a director of the Company since January 2012. Defendant Deeter has served as a partner of Bessemer Venture Partners ("Bessemer"), a venture capital firm, since 2005, and as a director of Twilio since 2010.

14. Defendant Sameer Dholakia ("Dholakia") has been a director and Chief Executive Officer ("CEO") of the Company since September 2014 and Chairman of the Board since September 2017.

15. Defendant Anne Raimondi ("Raimondi") has been a director of the Company since February 2018.

16. Defendant Hilary Schneider ("Schneider") has been a director of the Company since July 2017.

17. Defendant Sri Viswanath ("Viswanath") has been a director of the Company since September 2017.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants" or the "Board."

**OTHER RELEVANT ENTITIES**

19. Twilio is a Delaware corporation, with its principal executive offices located at 375 Beale Street, Suite 300, San Francisco, California 94105. Twilio provides a cloud communications platform that enables developers to build, scale, and operate communications within software

applications in the United States and internationally. Twilio's common stock is traded on the New York Stock Exchange under the ticker symbol "TWLO."

20. Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of Twilio.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the other public stockholders of SendGrid (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of December 13, 2018, there were approximately 47,659,204 shares of SendGrid common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

5

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

28.     Founded in 2009, SendGrid operates as a digital communication platform in the United States and internationally. SendGrid's cloud-based platform provides various tools to businesses, allowing their developers and marketers to seamlessly and effectively reach their customers using email.

29.     SendGrid provides customers with three services: (1) Email Application Programming Interface ("API"); (2) Marketing Campaigns; and (3) Expert Services. The Company's Email API service allows developers to use SendGrid's API in their preferred development framework to leverage SendGrid's platform to add email functionality to their

6

applications within minutes. This service enables businesses to reliably send thousands or billions of emails, and incorporates proprietary technology and domain expertise to significantly improve deliverability rates. SendGrid's Marketing Campaigns service allows marketers to upload and manage customer contact lists, create and test email templates, and then execute and analyze multi-faceted email campaigns that engage customers and drive growth. Its Expert Services help businesses further optimize their email delivery. For 2017, 2016, and 2015, revenue from SendGrid's Email API service and its Marketing Campaigns service represented 80%, 79%, and 79% and 13%, 9%, and 1% of the Company's total revenue, respectively.

30. Following its November 2017 initial public offering, the Company has consistently generated positive results.

31. For example, on July 31, 2018, the Company announced its second quarter 2018 financial results, including revenue of $35.7 million, a 32% increase over the second quarter of 2017. SendGrid reported Email API revenue of $28.2 million, a 32% increase compared with the second quarter of 2017, representing 79% of total revenue. Its Marketing Campaigns revenue grew by 97% to $6.3 million compared with the second quarter of 2017 and represented 18% of total revenue. Non-GAAP adjusted net income was $2.8 million, or $0.05 per diluted share, compared with $0.55 million, or $0.01 per diluted share, in the second quarter of 2017, an increase of $2.3 million. In addition, the Company raised its full year and third quarter 2018 revenue outlook. For 2018, the Company raised its outlook to revenue in a range of $142.5 million to $144.0 million, and non-GAAP adjusted net income in a range of $7.0 million to $9.0 million. For the third quarter of 2018, the Company raised its outlook to revenue in a range of $35.9 million to $36.1 million, and non-GAAP adjusted net income in a range of $1.25 million to $1.75 million. Commenting on the successful quarter, defendant Dholakia was quoted as stating:

7

> We had a strong second quarter, with accelerating sequential revenue growth, improving gross margins driving sharply higher profitability, and strong free-cash-flow generation . . . . We are pleased that our solid first half is carrying over into the second half, and we are raising our outlook for growth and profitability for the year.

32. On November 6, 2018, the Company announced its third quarter 2018 financial results, including revenue of $37.2 million, a 31% increase over the third quarter of 2017. SendGrid's Email API revenue was $29.5 million, a 31% increase compared with the third quarter of 2017, representing 79% of total revenue, while its Marketing Campaigns revenue grew by 65% to $6.4 million compared with the third quarter of 2017, representing 17% of total revenue. Non-GAAP adjusted net income was $2.8 million, or $0.05 per diluted share, compared with $0.6 million, or $0.02 per diluted share, in the third quarter of 2017, an increase of $2.2 million.

**The Proposed Transaction**

33. On October 15, 2018, Twilio issued a press release announcing the Proposed Transaction, which states, in relevant part:

> SAN FRANCISCO--Twilio (NYSE:TWLO) and SendGrid today announced that they have entered into a definitive agreement for Twilio to acquire SendGrid in an all-stock transaction valued at approximately $2 billion. At the exchange ratio of 0.485 shares of Twilio Class A common stock per share of SendGrid common stock, this price equates to approximately $36.92 per share based on today's closing prices. The transaction is expected to close in the first half of 2019.
>
> Adding the leading email API platform to the leading cloud communications platform can drive tremendous value to the combined customer bases. The resulting company would offer developers a single, best-in-class platform to manage all of their important communication channels -- voice, messaging, video, and now email as well. Together, the companies currently drive more than half a trillion customer interactions annualized*, and growing rapidly.
>
> "Increasingly, our customers are asking us to solve all of their strategic communications challenges - regardless of channel. Email is a vital communications channel for companies around the world, and so it was important to us to include this capability in our platform," said Jeff Lawson, Twilio's co-founder and chief executive officer. "The two companies share the same vision, the same model, and the same values. We believe this is a once-in-a-lifetime

8

opportunity to bring together the two leading developer-focused communications platforms to create the unquestioned platform of choice for all companies looking to transform their customer engagement."

\* \* \*

Under the terms of the transaction, Twilio Merger Subsidiary, Inc., a Delaware corporation and a wholly-owned subsidiary of Twilio, will be merged with and into SendGrid, with SendGrid surviving as a wholly-owned subsidiary of Twilio. At closing, each outstanding share of SendGrid common stock will be converted into the right to receive 0.485 shares of Twilio Class A common stock, which represents a per share price for SendGrid common stock of $36.92 based on the closing price of Twilio Class A common stock on October 15, 2018. The exchange ratio represents a 14% premium over the average exchange ratio for the ten calendar days ending, October 15, 2018.

The transaction is expected to close in the first half of 2019, subject to the satisfaction of customary closing conditions, including shareholder approvals by each of SendGrid's and Twilio's respective stockholders and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Certain stockholders of SendGrid owning approximately 6% of the outstanding SendGrid shares have entered into voting agreements and certain stockholders of Twilio who control approximately 33% of total Twilio voting power have entered into voting agreements, or proxies, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to vote in favor of the SendGrid acquisition and the issuance of Twilio shares in connection with the SendGrid acquisition, respectively.

**The Proxy Statement Contains Material Misstatements and Omissions**

34.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SendGrid's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Morgan Stanley's potential conflicts of interest; and (ii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion. Accordingly,

9

SendGrid stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest***

36.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley in serving as the Company's financial advisor.

37.     The Proxy Statement sets forth:

> In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services to SendGrid, and have received aggregate fees of approximately $7 million in connection with such services. Morgan Stanley may seek to provide financial advisory and financing services to Twilio, SendGrid and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

Proxy Statement at 139.  The Proxy Statement fails, however, to disclose whether Morgan Stanley has provided any services to Twilio in the two years prior to the date of its opinion, as well as the timing and nature of such services and the amount of compensation received by Morgan Stanley for such services.

38.     Full disclosure of all potential conflicts concerning investment bankers is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39.     The omission of this information renders the statements in the "Opinion of SendGrid's Financial Advisor, Morgan Stanley & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

40.     The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying

10

these analyses. Without this information, as described below, SendGrid's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SendGrid's stockholders.

41. With respect to Morgan Stanley's SendGrid and Twilio *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose quantification of the inputs and assumptions underlying the discount rates of 11.8% and 10.4%, respectively.

42. With respect to Morgan Stanley's *SendGrid Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rate range of 10.8% to 12.8%; (ii) Morgan Stanley's basis for applying a range of perpetual growth rates of 3.0% to 4.0%; and (iii) SendGrid's cash and outstanding debt utilized to derive the implied equity value.

43. With respect to Morgan Stanley's *Twilio Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 9.2% to 11.1%; (ii) Morgan Stanley's basis for applying a range of perpetual growth rates of 3.0% to 4.0%; and (iii) Twilio's net cash and outstanding debt.

44. With respect to Morgan Stanley's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley in the analysis.

45. With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose the individual price targets for the Company and Twilio as observed by Morgan Stanley.

46. The omission of this information renders the statements in the "Opinion of SendGrid's Financial Advisor, Morgan Stanley & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

48. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about potential conflicts of interest faced by the Company's financial advisor and the financial analyses performed by the Company's

financial advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

54. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55. The Individual Defendants acted as controlling persons of SendGrid within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SendGrid and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, SendGrid's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 3, 2019

Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email: fortunato@bespc.com

15